# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CHESTER LEWIS ROBINSON | ) CASE NO. 05-2338 |
| | ) |
| Debtor. | ) CHAPTER 7 |
| | ) |
| CINDY L. ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ADV. PRO. NO. 05-137 |
| | ) |
| CHESTER L. ROBINSON, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Cindy L. Robinson (the "Plaintiff") asserts that the debt owed to her by her former husband, Chester L. Robinson (the "Debtor") is in the nature of alimony, maintenance, or support and, therefore, is excepted from his bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(5). In the alternative, the Plaintiff seeks a declaration that the debt is excepted from discharge under 11 U.S.C. § 523(a)(15) because it arose out of a separation agreement. Finally, the Plaintiff argues that she holds a judgment lien or an equitable lien against the Debtor's property. The court held a trial in this case on March 30, 2006, in Clarksburg, West Virginia, at which time the court ordered post-trial briefs and took the case under advisement. For the reasons stated herein, the court will deny the relief sought by the Plaintiff.

1

## I. BACKGROUND

The Debtor and Plaintiff married in 1994. No children were born of the marriage, but the Debtor has two children from a previous marriage. Prior to the parties' marriage, the Debtor owned a home situated on a 12.75 acre parcel of real estate. During their marriage, both parties worked periodically and contributed to the household. The parties began divorce proceedings in 2003, and the final divorce decree was issued on January 7, 2005. The State court determined that the real estate increased in value by approximately $24,700.00 during the parties' marriage. Pursuant to the divorce decree, the increase in equity was considered marital property and divided equally. In that regard, the Debtor maintained full ownership of the real estate, while the Plaintiff was to receive a cash payment of $12,350.00 from the Debtor. The divorce decree granted the Plaintiff a judgment against the Debtor in the amount of $12,350.00 and a hot tub; the Plaintiff, however, has failed to record the judgment as a lien of record. The Debtor was not able to pay his judgment and filed his Chapter 7 bankruptcy on May 24, 2005. The Plaintiff filed this adversary proceeding on July 22, 2005, to except the $12,350.00 debt from discharge.

The Debtor is currently employed as a distressed mine laborer, working approximately thirty-four weeks per year. His work requires him to travel for long periods of time. His employer provides him with a motel room, but the Debtor is responsible for the balance of his travel expenses, including meals. In 2004 and 2003, his gross wages were $29,337.08 and $26,337.63, respectively. In addition, he received $7,363.00 in 2004 and $3,312.00 in 2003 in unemployment compensation. The Debtor submitted payment advices for the three-month period prior to trial, which showed average net earnings of $3,096.38, in comparison to $3,087.15[1] in average monthly living expenses.

The Plaintiff was previously employed as an exotic dancer but was injured while performing her duties. She remained unemployed for a significant period of time and is pursuing a worker's

---

[1] The Debtor provided the court with a letter notifying him that fifteen percent (15%) of his pay would be garnished for payment of his student loan debts. Neither his average net earnings or monthly living expenses account for this deduction.

2

compensation claim.[2] She recently obtained employment in a tanning salon and earns approximately $702.00 per month in comparison to her average monthly living expenses of $598.29. The Plaintiff received training in cartography during her previous military service and is a licensed Certified Nursing Assistant and phlebotomist.

Although the Debtor has recently received a discharge in bankruptcy, he still carries several debts that were not discharged. He owes approximately $39,500.00 in past-due child support, of which, at least $9,000.00 is a secured debt, $2,700.00 in student loan debt with a wage garnishment anticipated to commence shortly, and $700.00 in taxes.[3] By comparison, the Plaintiff owes approximately $13,000.00 in medical bills and $3,600.00 on a vehicle loan.

## II. DISCUSSION

The Plaintiff contends that the obligation owed to her by the Debtor pursuant to the divorce decree is excepted from discharge under 11 U.S.C. § 523(a)(5) because it is in the nature of alimony, maintenance, or support. In the alternative, the Plaintiff asserts that the debt is excepted from discharge under 11 U.S.C. § 523(a)(15) because the benefit to the Debtor of discharging the debt is outweighed by the detriment to her in not receiving the payment when the Debtor has sufficient disposable income to repay the obligation. The Debtor disagrees that the obligation is in the nature of alimony, maintenance, or support. Furthermore, the Debtor contends that he does not have the ability to repay the obligation, or, in the alternative, that the benefit to him of discharging it outweighs the detriment to the Plaintiff should she not receive the money. The Plaintiff asserts that the judgment rendered in her favor constitutes a judicial lien against the Debtor's real property, which survives the bankruptcy regardless of discharge. Furthermore, she argues that her lien is in the nature of an equitable lien. Although the court had previously determined that the Plaintiff did not hold an equitable lien, it will now

---

[2] The Plaintiff testified that her worker's compensation claim was denied because she was an independent contractor and not an employee of the club. She, however, has obtained counsel to pursue the claim.

[3] The Debtor's net monthly income reflects a payroll deduction for child support arrearage; however, payments on the other obligations are not included in the Debtor's monthly income and expenses.

3

reconsider, at the Plaintiff's request, its determination on this issue.[4]

**A. Alimony, Maintenance, or Support**

The Plaintiff argues that the $12,350.00 debt is in the nature of alimony, maintenance, or support on the basis that it represents her interest in the marital home, which was a source of support for her. Under §727(b) of the Bankruptcy Code, a Chapter 7 discharge extinguishes a debtor's obligations on "all debts that arose before the date of the order for relief," except for the debts specified in § 523 of the Bankruptcy Code. The policy underlying §523(a)(5) departs from the general policy of absolution or fresh start in order to enforce an overriding public policy favoring the enforcement of familial obligations. *Hecker v. Hecker (In re Hecker),* Case No. 04-76913-SCS, APN 05-7021-SCS, 2005 Bankr. LEXIS 2638 *17 (Bankr. E.D. Va. November 21, 2005) (citing *Robb-Fulton v. Robb (In re Robb)*, 23 F.3d 895, 897 (4th Cir. 1994)). The Bankruptcy Code excepts from discharge any debts to a "former spouse or child of the debtor ... for alimony to, maintenance for, or support of such spouse or child.... [provided that] such liability is actually in the nature of alimony, maintenance or support." 11 U.S.C. § 523(a)(5).

Determining whether or not a debt is in the nature of alimony, maintenance, or support is a fact specific inquiry. *Brunson v. Austin (In re Austin)*, 271 B.R. 97, 106 (Bankr. E.D. Va. 2001). The complaining spouse bears the burden of proof. *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986). The substance of the agreement determines the nature of the obligation rather than the terms affixed to it; however, the court will look to the language of the agreement unless there is a showing of a mutual intent contrary to the clear language of the agreement. *Id*.

In determining the parties' intent, the court considers four, non-exclusive factors: (1) the categorization of the debt, if any, in the parties' agreement; (2) the purpose for which the debt is intended; (3) the relative bargaining power of the parties at the time of the agreement; (4) evidence of overreaching. See *Catron v. Catron (In re Catron),* 164 B.R. 912, 919 (Bankr. E.D. Va. 1994), *aff'd,* 43 F.3d 1465 (4th Cir. 1994). In determining whether overreaching exists, the court examines whether the terms of the agreement grossly favor one spouse over the other, the representation of both

---

[4] See Order Granting in Part Motion to Reconsider entered on April 6, 2006.

4

parties by counsel, whether the complaining spouse had knowledge of the debtor spouse's inability to fulfill the terms of the agreement, and the age, health, and intelligence of the parties. *Id.* at 919. In looking at the language and substance of the agreement to determine the categorization of the debt, the court must consider the label assigned to a particular payment, as well as examine the context in which the obligation arises. *Id*. For example, the payment of alimony typically ceases upon the remarriage of the former spouse. *Tilley,* 789 F.2d at 1078. *See also Beiler v. Beiler (In re Beiler)*, 80 B.R. 63, 64 (E.D. Va. 1987) (holding that, absent evidence of a mutual intent contrary to the provision specifically releasing each party from claims of spousal support or alimony, the $5,000.00 obligation owed under the divorce decree was not in the nature of alimony, maintenance, or support and, therefore, was discharged).

In this case, there is no evidence that demonstrates overreaching in the divorce decree or that one party had a superior bargaining position in executing the agreement. The Plaintiff and the Debtor were represented by competent counsel. The court divided the equity in the real property equally between the two parties. Additionally, the Plaintiff was awarded the hot tub. The language of the agreement specifically labels the $12,350.00 obligation as a property distribution and not alimony. The divorce decree sets out the division of property and debts in Paragraph 4, which is labeled "Property Distribution." Under Paragraph 5, which is labeled "Alimony," there is the statement, "Neither party requests alimony." Furthermore, it is stated that, "Alimony is waived at this time and both parties will be forever barred from seeking the same." Thus, the purpose of the $12,350.00 obligation appears to be compensation to the Plaintiff for her contributions to the marital home.

It should also be noted that this is not a case where the Plaintiff stayed at home to care for her children and her husband. *See Bristow v. Bristow (In re Bristow)*, Case No. 04-50235, Ad. Proc. No. 04-6025, 2005 Bankr. LEXIS 1117 *10 (Bankr. M.D.N.C. April 22, 2005) (finding that the debtor's obligations under the divorce decree were in the nature of support because the non-debtor spouse remained absent from the public work force throughout the twenty-four years of the marriage in order to provide care for the children and support to the debtor). The Plaintiff worked throughout her marriage and substantially contributed to the economic support of the household. Because the Plaintiff

bears the burden of proof, she must demonstrate a mutual intent contrary to the plain language of the agreement. *Tilley,* 789 F.2d at 1078. The evidence does not support a mutual intention in contradiction to the terms of the agreement. Therefore, based on the evidence, the court finds that the parties categorized the debt as a property distribution; the purpose of the debt was apparently not in the nature of alimony because the Plaintiff waived alimony and worked during the marriage; the relative bargaining powers of the parties was even; and no evidence exists of overreaching. Accordingly, the court concludes that the debt owed to the Plaintiff is not in the nature of alimony, maintenance, or support, and is not excepted from discharge under § 523(a)(5).

**B.  Ability to Repay the Obligation**

The Plaintiff asserts that even if the debt is not excepted from discharge under § 523(a)(5), then it is excepted from discharge under § 523(a)(15) because it is a debt that was incurred during the course of a divorce proceeding which the Debtor has the ability to repay. The Debtor agrees that the debt is encompassed within § 523(a)(15), but argues that he is not able to repay the debt without impairing his ability to provide for the reasonably necessary support of himself and one of his sons, who intends to live with him.

The burden of proof in an action under § 523(a)(15) is bifurcated. The Plaintiff carries the burden of establishing that the debt is a one incurred by the Debtor during the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other qualifying order. Once the Plaintiff has satisfied this burden, the burden of establishing that the Debtor lacks the ability to repay the obligation resides with the Debtor. If the Debtor fails to establish an inability to pay, the burden then shifts back to the Plaintiff to prove by a preponderance of the evidence that the detrimental consequences to the Plaintiff outweigh the benefit to the Debtor. *Morris v. Morris (In re Morris)*, 197 B.R. 236, 243 (Bankr. N.D.W. Va. 1996).

Because the $12,350.00 obligation is created by the terms of the separation agreement and divorce decree, the court finds that it is a debt within the meaning of § 523(a)(15). The burden thus shifts to the Debtor to prove that he does not have the ability to pay the debt. *Randle v. Highfill (In re Highfill)*, 336 B.R. 701, 708 (Bankr. M.D.N.C. 2006). To establish his inability to pay, the Debtor

6

must show that excepting the debt from discharge would reduce his income to less than the amount reasonably necessary to be expended for the maintenance or support of a debtor and his dependents. *Id.* at 709.  Since the language of § 523(a)(15)(A) mirrors that of § 1325(b)(2), the disposable income test of § 1325(b)(2) is applicable in determining whether or not the Debtor has the ability to repay the marital debt as of the date of the trial.  *Morris*, 197 B.R. at 243-44.

      The Debtor argues that he does not have the ability to repay the $12,350.00 debt because his reasonably necessary expenses exceed his net monthly income.  The Debtor submitted seventeen payment advices from 2005 and 2006 to the court for consideration.  While the court has examined these payment advices, the court finds that the earnings do not accurately reflect the Debtor's average monthly income because they assume that the Debtor works fifty-two weeks per year.  According to the Debtor's testimony, however, he only works approximately thirty-four weeks per year.  During his annual period of unemployment, he collects a reduced amount of unemployment compensation, as reflected by his income from 2003 and 2004.  Therefore, the court finds that the average monthly income is most accurately reflected by the average of the Debtor's earnings and unemployment compensation from 2003 and 2004.  In 2003 and 2004, the Debtor earned $26,337.63 and $29,337.08, respectively, and received $3,312.00 and $7,363.00 in unemployment compensation, resulting in $4,014.57 as an average gross monthly income. [5]  The court then looked to the payment advices submitted by the Debtor to determine the average percentages withheld from the Debtor's wages to determine the net monthly income.  The following deductions are taken from his pay each month: $853.90 (21.27%) for taxes; $375.00 for child support; and $168.61 (4.2%) for IRA contributions.  After these deductions, the Debtor's net monthly income is $2,617.06, while his monthly expenses averaged $3,087.15 during the six-month period prior to trial, leaving a $470.09 deficit in the

---

[5] According to the payment advices, the Debtor's gross monthly earnings averaged $3,449.50, with an average tax reduction of $733.71 (21.27%), child support reduction of $375.00 and an IRA contribution of $144.63 (4.2%), leaving a net monthly income of $2,196.16.  Because the amounts demonstrated in the payment advices are less than the amounts reflected in the 2003 and 2004 tax returns, the Plaintiff is not prejudiced by the court's use of the 2003 and 2004 income to determine the Debtor's disposable income.

Debtor's budget each month.

The Plaintiff, however, contends that the Debtor's expenses include luxury items that are not reasonably necessary for the support of the Debtor and his dependents. The Plaintiff argues that the following expenses incurred by the Debtor are not reasonably necessary: (1) $30.00 per year for membership in the Benevolent & Protective Order of Elks (the "BPO Elks"); (2) $38.87 for new dishes; (3) $1,500.00 for a Dodge truck; (4) $335.34 for an under ground work light; (5) $200.00 for multiple faucets; (6) $97.79 for a Christmas tree and decorations; (7) $490.67 for Christmas gifts for his children; (8) $481.11 monthly for a payment on a 2000 Dodge truck; (9) $140.00 monthly for vehicle insurance; and (10) $795.03 monthly for food.

The Plaintiff argues that the Debtor's BPO Elks membership expense of $30.00 per year is unreasonable. The court, however, disagrees and finds that $30.00 per year for entertainment is reasonable. As to the Plaintiff's argument concerning the expenditures for new dishes, an under ground work light, and multiple faucets, the court finds that these expenses are reasonable costs for home maintenance and tools of the trade. The Plaintiff also contends that the Debtor's expenditures of $97.79 for a Christmas tree and decorations and $490.67 for Christmas gifts for his children are excessive; however, the court finds that these expenditures are also reasonable. *See Innes v. Kansas (In re Innes)*, 284 B.R. 496, 505 (D. Kan. 2002) (stating that "[t]o call any of those expenditures unreasonable would mean that families living at the minimal standard of living should not be able to afford to give their children modest Christmas gifts, to take a single frugal summer vacation, to use tax refunds or obtain loans for the purpose of repairing their sewer and converting their garage into a necessary bedroom, to participate in an employer's stock purchase program at the bi-weekly rate of $20.00, to join a weekly bowling league as the only form of recreation for the parents, to have their children participate in school band, or to support their children by attending their school sporting events."); *In re Grant*, 51 B.R. 385, 396 (Bankr. N.D. Ohio 1985) (citing debtor's "freewheeling spending," which included monthly entertainment expenses of $450.00 and Christmas expenditures of $900.00); *In re Smith*, 269 B.R. 686, 691 (finding that debtors' monthly expenditures of $100.00 for gifts for Christmas, birthdays, and special days were excessive and should be reduced to $60.00 per

8

month).

Included in the Debtor's expenses is $1,500.00 for the purchase of a Dodge truck. After the Debtor purchased the Dodge truck, he discovered that it was not reliable for getting him to work. Thus, he purchased a 2000 Dodge truck that carries with it a monthly payment of $481.11. As to the $1,500.00 expenditure on the recent purchase of the Dodge truck, the court finds that this expense, which if broken down over the six-month period, constitutes a $250.00 per month expense, is unreasonable. The Debtor only needs one reliable form of transportation for his employment, and, therefore, spending $1,500.00 on a truck that is insufficient for transporting him to and from work, is not a reasonably necessary expense. The Plaintiff further asserts that the Debtor's $481.11 monthly payment on his 2000 Dodge Truck is excessive and not reasonably necessary for his support. The Debtor's expense for reliable transportation is reasonably necessary for his employment. Furthermore, in light of the Debtor's recent bankruptcy filing, he undoubtedly incurred higher financing rates for his transportation. Therefore, the court finds that the Debtor's transportation expenses are reasonably necessary given his work-related travel and financial condition.[6] Finally, the Plaintiff asserts that the Debtor's food expenses are in excess of what is reasonably necessary. The Debtor, however, testified that while his lodging expenses are reimbursed by his employer, he is responsible for paying for his meals while he is traveling for work. As a result of the Debtor's frequent travel for work, the court finds that the Debtor has sufficiently demonstrated a legitimate basis for his increased food expenses.

Given the court's above findings, the Debtor's monthly budget still has a $220.09 deficit, which renders him unable to repay the $12,350.00 obligation owed to the Plaintiff. Therefore, the Debtor has satisfied his burden by demonstrating his inability to pay, and there is no reason to balance the competing needs of the Debtor and the Plaintiff under § 523(a)(15)(B).

**C. Judgment Lien**

---

[6] The court further acknowledges that even if this expense were reduced, it would only lessen the deficit in the Debtor's monthly budget, and such a reduction would not result in the Debtor having the ability to repay the $12,350.00 debt.

9

The Plaintiff contends that she was granted a lien on the Debtor's real estate in the divorce decree entered by the Circuit Court of Marion County, West Virginia, and as such, she is a secured judgment creditor. The Debtor, however, argues that the Plaintiff's lien does not survive the discharge of the underlying debt.

The West Virginia Code provides:

> Every judgment for money rendered in this State ... shall be a lien on all the real estate of or to which the defendant in such judgment is or becomes possessed or entitled, at or after the date of such judgment.... Such lien shall continue so long as such judgment remains valid and enforceable, and has not been released or otherwise discharged.

W. Va. Code § 38-3-6.

Accordingly, as between the judgment debtor and the judgment creditor, every judgment becomes a lien on a the judgment debtor's property once that judgment is entered by the court. *E.g.*, *Richardson v. White*, 127 S.E.2d 636, 636-37 (W. Va. 1925) (stating that it is not necessary that a judgment be recorded in the real property records to attach to the judgment debtor's property); *Renick v. Ludington*, 20 W. Va. 511, 559 (1882) ("[A]s between the judgment, creditor and debtor, the statute requiring the judgment to be docketed [to be perfected against third parties] has no application of force."); John W. Fisher, II, *The Scope of Title Examination in West Virginia: Can Reasonable Minds Differ?* 98 W. Va. L. Rev. 449, 470-71 (1996) ("[A] judgment becomes a lien against real estate as provided by, and from the time set forth in, West Virginia Code Section 38-3-6 . . . .").

Of course, the fact that a judgment lien attaches to the real property of the judgment debtor – without the need to record that judgment in the real property records where the judgment debtor owns real property – does not mean that the unrecorded judgment lien will be valid and enforceable against third parties. Perfection of an interest in real property as it pertains to purchasers is the subject of a separate West Virginia Code provision:

> No judgment shall be a lien as against a purchaser of real estate for valuable consideration without notice, unless it be docketed ... in the county wherein such real estate is, before a deed therefor to such purchaser is delivered for record to the clerk of the county court [county commission] of such county; nor shall such judgment, though it

10

> be docketed as aforesaid, be a lien, after ten years from its date as against such a purchaser who purchases after such ten years, unless within such ten years an execution shall have issued on such judgment and such execution or a copy thereof be filed in the office of such clerk, or, unless such purchaser have actual notice of the fact that such execution was issued, though it was not so filed; nor shall such judgment, though it be docketed as aforesaid, and though one or more executions shall have issued thereon and shall have been filed as aforesaid, be a lien, after ten years from the date of the last execution so filed, as against such a purchaser who purchases after such ten years, unless such purchaser have notice of the issuing of an execution within ten years preceding the date of such purchase.

W. Va. Code § 38-3-7.

Thus, unless a bona fide purchaser has notice of an unrecorded judgment lien against real property, the bona fide purchaser can take title to the judgment debtor's real property free of the judgment lien that has not been recorded in the real property records where the real property is situated. *E.g.*, *Cooper v. Cooper*, 98 S.E.2d 769, 772 (W. Va. 1957) ("Inasmuch as [the purchasers] were fully aware of the claim of [the creditor] . . . and that such claim could result in a judgment with its resulting lien, we conclude that they had actual notice and therefore were not protected by the statute."); Fisher, *supra*, at 469 ("West Virginia is a 'notice' jurisdiction as to 'purchasers' ").

As against other creditors, however, § 38-3-7 has no application and other creditors can take priority over an unrecorded judgment lien even if those creditors have notice of the unrecorded judgment lien. *E.g.*, W. Va. Code § 40-1-9 ("Every such contract, every deed conveying any such estate or term, and every deed of gift, or trust deed or mortgage, conveying real estate shall be void, as to creditors . . . until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, trust deed or mortgage may be."); *Acadian Coal & Lumber Co. v. Brooks Run Lumber Co.*, 107 S.E.2d 422, 426 (W. Va. 1921) ("[A lien creditor's] status is fixed by the record . . . ."); *Delaplain & Son v. Wilkinson & Co.*, 17 W. Va. 242 (1880) ("It is immaterial whether the creditor has notice [of the judgment lien] . . . . The statute declares it void as to all creditors, without discriminating as it does in the clause touching purchasers, in respect to notice."); Fisher, *supra*, at 469-70 ("[N]otice of an unrecorded deed is not relevant as to 'creditors' ").

In this case, the January 7, 2005 divorce decree issued by the Circuit Court of Marion County provided that the Debtor was to pay $12,350.00 to the Plaintiff. In accordance with the laws of West Virginia, this award constitutes a judgment. *E.g.*, *Shaffer v. Stanley*, 593 S.E.2d 629, 634 (W. Va. 2003); *Collins v. Collins*, 543 S.E.2d 672, 681 (W. Va. 2000); *Korczyk v. Solonka*, 42 S.E.2d 814, 817-18 (W. Va. 1947). Because every judgment creates a lien on real estate, as between the parties, the Plaintiff had a lien on the real estate owned by the Debtor as of the date the judgment was rendered, and this judgment was in existence before the Debtor filed his May 24, 2005 bankruptcy petition. *See, e.g.*, *In re Prater*, No. 05-13666, 2006 Bankr. LEXIS 1166, *7 (Bankr. D.S.C. May 18, 2006) (stating that as a matter of federal law, liens are determined on the date that the debtor files his bankruptcy petition).

Rather than attempting to attack the status of the unperfected judgment lien through a motion to avoid the lien under either 11 U.S.C. §§ 522(h) or 522(f),[7] the Debtor contends that, pursuant to the language of W. Va. Code § 38-3-6, the Debtor's personal liability on the lien was discharged and, therefore, the unrecorded judgment lien has also been discharged. See § 38-3-6 ("Such [judgment] lien shall continue so long as such judgment remains valid and enforceable, and has not been . . . otherwise discharged."). The court disagrees.

It is axiomatic that a discharge in bankruptcy voids any personal liability of the debtor on a lien against the debtor's real property. 11 U.S.C. § 524(a)(1) ("A discharge in a case under this title – (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor . . . ."). With respect to a judgment lien, this means that a debtor's personal liability on the judgment lien is discharged; however, the personal discharge does not extinguish the judgment lien creditors rights in the attached real property. *E.g.*, *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor in personam – while leaving intact another –

---

[7] The Plaintiff raises the argument that her judgment lien cannot be avoided under the principle set forth in *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991), the court makes no finding as to whether or not the judgment lien may be avoided by the Debtor because the Debtor is not pursuing a lien avoidance action under 11 U.S.C. § 522(f) at this time.

12

namely, an action against the debtor in rem") *Garran v. SMS Fin. V, LLC (In re Garran)*, 338 F.3d 1, 5 (1st Cir. 2003) ("Since a judicial lien attached to property is a liability in rem, it is not routinely discharged at the conclusion of the bankruptcy case."); *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) ("[L]iens pass through bankruptcy unaffected. A bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property."); *Wrenn v. American Cast Iron Pipe Co. (In re Wrenn)*, 40 F.3d 1162, 1154 (11th Cir. 1994) ("We therefore conclude that [the judgment] lien remains enforceable [after discharge], unless some provision of the Bankruptcy Code aside from the discharge provision makes the lien avoidable.").

In short, the Plaintiff has a judgment lien against the Debtor that has attached to the Debtor's real property, but which is not perfected against other creditors or bona fide purchasers without notice. As between the parties, that judgment lien continues to exist with respect to the Debtor's real property notwithstanding the Debtor's discharge of personal liability on the judgment lien debt.

### D. Equitable Lien

The Plaintiff argues that she is entitled to an equitable lien against the Debtor's real property because, absent such a lien, the Debtor would be unjustly enriched. The court previously held that the Plaintiff was not entitled to an equitable lien because equitable liens are only enforced when a lienholder has done "[e]verything proper to secure, perfect and maintain the lien, only to be outdone by some technicality of law."[8] Reconsideration of the order was held in abeyance and an extension of time to file a notice of appeal was granted. The court now examines its previous holding that the Plaintiff does not hold an equitable lien.

An equitable lien is based on the equitable doctrine of unjust enrichment. *Caldwell v. Armstrong*, 342 F.2d 485, 490 (10th Cir. 1965). An equitable lien may arise in one of two ways: first, from a written contract which demonstrates an intention to charge some particular property with a debt; or second, from a declaration by a court of equity in light of considerations of right and justice or

---

[8] See Order Denying Plaintiff's Motion to Reconsider and Granting Plaintiff's Motion for an Extension of Time to File Notice of Appeal entered on February 2, 2006.

13

unjust enrichment. *Foster v. Frampton-Foster Lumber Co.*, 123 S.E. 50, 52 (W. Va. 1924). When an equitable lien is imposed to prevent unjust enrichment, it takes on a limited form of a constructive trust. *Leyden v. Citicorp Industrial Bank*, 782 P.2d 6, 10 (Colo. 1989).
The difference is that while a constructive trust conveys complete title, an equitable lien only grants a security interest in the property, which can then be used to satisfy a money claim. *Id*. A constructive trust is warranted when there is clear and convincing evidence that such imposition is necessary to prevent unjust enrichment. *Peterson v. Lozano*, C2-97-1305, 1998 Minn. App. LEXIS 398, *3-4 (Minn. Ct. App., April 14, 1998). For instance, a constructive trust may be recognized in favor of a person equitably entitled to property when legal title to it is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means. *Id*.

   The State court entered a divorce decree memorializing the proposed property settlement agreement entered into by the parties. The property settlement agreement states, "I agree to pay the Respondent the sum of $13,500.00 in a money order paid the day of final divorce." In the written agreement between the parties, there is no nexus between the amount owed to the Plaintiff and the real property owned by the Debtor. In the final divorce decree, the State court ordered, "No later than 60 days from entry of the order, Petitioner will pay Respondent the sum of $12,350, which represents the Respondent's share in the marital property." Furthermore, the State court ordered, "Accordingly, Respondent, Cindy Robinson, is awarded a judgment against the Petitioner, Chester Robinson, in the amount of $12,350, plus personal property in the form of a hot tub. The judgment shall accrue simple interest upon the unpaid principal balance at the legal rate of 10% per annum commencing 60 days after this order is entered and continuing thereafter until paid in full." While the State court links the obligation to the Plaintiff's share in the marital property, the State court does not condition the Debtor's award of "title to the marital home" upon the payment of the obligation. Moreover, the State court clearly awards the Plaintiff a money judgment against the Debtor. It went no further in fashioning relief and expressed no findings upon which extraordinary relief could be granted. Therefore, the court finds that the divorce decree does not convey an equitable lien in favor of the Plaintiff nor does the decree provide sufficient grounds for imposing an equitable lien.

In the absence of a written contract, the Plaintiff must demonstrate by clear and convincing evidence that an equitable lien is warranted to prevent unjust enrichment. *See e.g., Dodd v. Hinton*, 312 S.E.2d 293, 295 (W. Va. 1984) (holding that the husband was not entitled to an equitable lien on his wife's share of the proceeds from jointly owned real property, which he had solely paid for, when there was no express language in the divorce decree); *In re Donahue*, 862 F.2d 259, 264-65 (10th Cir. 1988) (holding that even though there was no wrongdoing to warrant the imposition of a constructive trust, the divorce decree itself created an equitable lien by stating that the property was awarded "subject to ... the judgment"); *Maus v. Maus*, 837 F.2d 935, 939-40 (10th Cir. 1988) (holding that a constructive trust "will not be imposed unless an aroma of wrongdoing permeates the atmosphere"). The Plaintiff argues that the Debtor is unjustly enriched by being permitted to retain the real property without paying his obligation to the Plaintiff.

The Plaintiff has offered no evidence of wrongdoing in support of her contention that the Debtor has been unjustly enriched. In fact, the Debtor testified that prior to filing for bankruptcy, he attempted to obtain a loan secured by the real property to pay his obligation to the Plaintiff, but he was unsuccessful. Furthermore, the court has found that, in addition to the child support lien of approximately $9,000.00, the Plaintiff holds a judgment lien against the Debtor's real property, which has not been avoided. Given these circumstances, the court finds that there is no justification for imposing an equitable lien in favor of the Plaintiff.

### III. CONCLUSION

For the reasons set forth herein, the Debtor's personal obligation on the debt owed to the Plaintiff is discharged.

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.